UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 21-CV-1874 (RER)

PEDRO HERNANDEZ, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

VERSUS

SUB ENTERPRISES INC AND JOEL REICH

**MEMORANDUM AND ORDER**

March 7, 2023

**RAMON E. REYES, JR., U.S.M.J.:**

Before the Court are three post-judgment motions. (ECF Nos. 34, 38, and 44). In the underlying action,[1] Pedro Hernandez ("Hernandez" or "Plaintiff") sought to recover unpaid wages and associated damages from his former employers, Sub Enterprises Inc. ("Sub Enterprises") and Joel Reich ("Reich") (collectively, "Defendants") under the Fair Labor Standards Act of 1988, 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law, N.Y. Lab. Law §§ 650 *et seq*. (ECF No. 1 at 1). On October 29, 2021, I entered judgment against Sub Enterprises in the amount of $70,000 (ECF No. 23) pursuant to the acceptance of a Rule 68 offer of judgment (ECF No. 20).[2] After Reich failed to comply with a Court Order during post-judgment discovery, Plaintiff asked the Court to hold him in contempt. (ECF No. 34 ("Motion for Contempt")). Defendants subsequently requested a protective order (ECF No. 38 ("Motion for Protective Order")), and a stay of all civil

---

[1] All parties consented to my jurisdiction under 28 U.S.C. § 636(c). (ECF No. 19; ECF Order dated 10/26/2021).

[2] At the time of judgment, all claims against Reich and Sub Enterprises were dismissed with prejudice. (ECF No. 23).

1

proceedings or, alternatively, a 120-day extension to respond to Plaintiff's Motion for Contempt (ECF No. 44 ("Motion for Stay or Extension")).

For the reasons that follow, the Motion for Contempt and the Motion for a Protective Order are granted in part and denied in part, and the Motion for Stay or Extension is denied.

## BACKGROUND

Nearly six months after judgment was entered, Hernandez was still waiting to recover the $70,000 from Defendant and judgment debtor, Sub Enterprises. (ECF No. 26 at 1). To aid judgment enforcement, on March 22, 2022, Hernandez, the judgment creditor, served Reich with a subpoena in which he commanded Reich to answer questions about Sub Enterprises within seven days.[3] (ECF No. 26-1 ("Information Subpoena")). When Reich failed to respond to the Information Subpoena, Hernandez filed a Motion to Compel (ECF No. 26), which I granted. I directed Reich to respond to the Information Subpoena by June 3, 2022. (ECF Order dated 5/20/2022). When that deadline passed without any response from Reich, Hernandez filed a motion to hold Reich in contempt. (ECF Nos. 27–30). I denied that Motion without prejudice and again directed Reich to respond fully to Hernandez's Information Subpoena by August 19, 2022. (ECF Minute Entry and Order dated 8/4/2022). Although Reich met that deadline, his answers to Questions 9, 11, and 12 were deficient,[4] prompting Hernandez to ask the Court to compel Reich to amend his responses to

---

[3] Hernandez's service of the Information Subpoena pursuant to N.Y. C.P.L.R. § 5224 was proper. (*See* ECF No. 35-3). Under Federal Rule of Civil Procedure 69, post-judgment discovery may be obtained as provided by federal or state procedural rules. Fed. R. Civ. P 69(a)(2); *see Vicedomini v. A.A. Luxury Limo*, No. 18-CV-7467 (LDH) (RLM), 2021 WL 620932, at *1 (E.D.N.Y. Feb. 17, 2021) ("A judgment creditor may rely on federal or state discovery procedures in order to obtain information relevant to the satisfaction of a judgment."); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 Civ. 1590, 2013 WL 57892, at *6 (S.D.N.Y. Jan. 4, 2013) ("There is no dispute that Rule 69 expressly authorizes [Plaintiff], as a judgment creditor, to rely on federal discovery procedures, as well as on New York state discovery procedures, including information subpoenas.").

[4] These questions are as follows: (9) "Please identify any PPP money Sub Enterprises, Inc. a/k/a Sub Enterprises was granted since January 1, 2020. Identify where the money was originally held and where it is currently held."; (11) "What is Sub Enterprises, Inc. a/k/a Sub Enterprises connection to The Barrier Group, Inc.? Has Sub Enterprises, Inc.

those questions. (ECF No. 32 at 1). Hernandez explained that "[t]he answers to these questions are particularly important as Plaintiff believes Mr. Reich engaged in a fraudulent conveyance, and is currently operating alter egos or successors of the judgment debtor." (*Id.* at 2). I granted that Motion and directed Reich to answer Questions 9, 11, and 12 "completely, fully, and accurately" within fourteen days of receipt of my Order ("October Order").[5] (ECF Order dated 10/5/2022). Again, Reich did not comply.

Consequently, Hernandez filed the Motion for Contempt that is presently before this Court. (ECF Nos. 34–36). In addition to opposing Plaintiff's Motion, Defendants moved for a protective order to "shield [Reich] from producing confidential and/or sensitive financial information." (Motion for Protective Order at 1). At a hearing on these two motions, I directed Reich to either pay the outstanding $70,000 judgment or provide complete answers to the subpoena, short of which I would hold him in contempt.[6] (ECF Minute Order dated 12/14/2022). Unbeknownst to the Court, while these two motions were pending and during the week of the hearing, Reich became the subject of a federal criminal investigation ino his personal and business activities, including those related to Sub Enterprises. (Motion for Stay or Extension at 2–3; *see also* ECF Nos. 44-1–

---

a/k/a Sub Enterprises transferred any property to the Barrier Group, Inc. since January 1, 2020? Does the Barrier Group, Inc. utilize the same staff, equipment or telephone number that Sub Enterprises, Inc. a/k/a Sub Enterprises uses or used?"; and (12) "Please identify all companies or businesses located at 435 Bellvale Rd, Chester, NY 10918. Identify the staff of each company, including all staff members' names, titles, addresses and telephone numbers. For each company identified, explain its connection to Sub Enterprises, Inc., i.e., does it share property with Sub Enterprises, did it receive property from Sub Enterprises in a transfer, etc." (ECF No. 35-3 at 10–12).

[5] I also directed Hernandez to serve a copy of this Order on Reich by October 7, 2022. (ECF Order dated 10/5/2022). On October 6, 2022, Hernandez sent the Order via Federal Express overnight delivery to Joel Reich c/o Scott Levenson, Levenson Law LLC, 44 S Maple Avenue, Ridgewood, New Jersey 07450. (ECF No. 33). Although that mailing was returned (ECF No. 35 ¶ 9), because Reich and Reich's counsel had actual notice of the Order through ECF and parties have not raised objections regarding service, the Court is assured that Reich's counsel received the Order and overlooks this procedural deficiency.

[6] Reich was not present at the hearing, but he was represented by Hershel Katz, who is "of counsel" with Levenson Law. At the hearing, Katz was directed to file a Notice of Appearance but he has not done so thus far. (ECF Order dated 12/14/2022).

3

44-2). It was not until two months after the hearing that Defendants disclosed this investigation to the Court and requested a stay of civil proceedings. (Motion for Stay or Extension at 2–3).

## DISCUSSION

Because this case was brought in the United States District Court for the Eastern District of New York, this Court applies federal substantive law to the three motions, and addresses each in turn.

I.  Motion to Hold Reich in Contempt is Granted In Part and Denied In Part

Hernandez moves to hold Reich in contempt for failure to comply with the Court's October Order to respond "completely, fully, and accurately" to Questions 9, 11, and 12. (ECF No. 36 at 2). Plaintiff asks that until Reich fully complies with this Order, the Court impose a weekly fine of $500 and hold him liable for $2,175 in attorney's fees that were incurred in enforcing the judgment and subpoena. (*Id.*; ECF No. 35 ¶¶ 2(a), 11).

A. Legal Standards

The court that issues a subpoena "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(g). Additionally, during discovery, when a court "orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." Fed. R. Civ. P. 37(b)(1). The court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (2002). This power of contempt is an "inherent power" of the court, "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *People by Abrams v.*

4

*Terry*, 45 F.3d 17, 23 (2d Cir. 1995) (citations omitted). Further, and pertinent to this Motion, "[i]n any case in which a United States magistrate judge presides with the consent of the parties . . . the magistrate judge may exercise the civil contempt authority of the district court." 28 U.S.C.A. § 636(e)(4).

A party may be held in civil contempt if (1) the order they failed to comply with was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply. *Paramedics Electromedicina Comercial. v. GE Med. Sys. Info. Techs.*, 369 F.3d 645, 655 (2d Cir. 2004); *King v. Allied Vision*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Monsanto Co. v. Haskel Trading*, 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998). It is not necessary to establish that the violation of the contemnor was willful. *Paramedics*, 369 F.3d 645 at 655. "[C]ivil contempt seeks to coerce the contemnor into compliance with the court's order or to compensate the complaining party for losses incurred as a result of the contemnor's conduct." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 63 (E.D.N.Y. 2008).

B. <u>Analysis</u>

All three elements of civil contempt are met, and Reich has not asserted a compelling defense.

i. <u>Court's Order Was Clear and Unambiguous</u>

"A clear and unambiguous order is one specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 (KAM) (ALC), 2011 WL 1004708, at *8 (E.D.N.Y. Mar. 18, 2011) (citing *Medallic Art Co. v. Novus Mktg.*, No. 99 Civ. 502, 2003 WL 22053130, at *1 (S.D.N.Y. Sept. 2, 2003)).

Reich argues that the language of the October Order was "vague" and neglected to "direct Mr. Reich to produce any certain documents, affidavits, or anything tangible." (ECF No. 40 at 4).

5

However, the Order directed Reich to provide complete responses to Questions 9, 11, and 12 (ECF Order dated 10/5/2022), clearly identifying the three questions that Reich was required to answer. The subpoena itself instructed Reich to provide answers "in writing under oath" (ECF No. 35-3 at 2), such that Reich was on notice that only written responses were required, not the production of "documents, affidavits, or anything tangible." (ECF No. 40 at 4). Although Reich's counsel was in contact with Plaintiff's counsel on or around October 31, 2022, about submitting amended responses under seal (ECF Nos. 35 ¶ 9, 36 at 4), Reich did not seek clarity from the Court or Plaintiff as to the substance of the questions or the type of information sought. His inquiry about sealing his responses and subsequent request for a protective order support the Court's finding that the Order was clear and unambiguous.

Reich also points to the broad and "ambiguous nature" of Questions 11 and 12, noting that "Plaintiff does not even limit the question to business[es] owned by or even associated with Mr. Reich." (ECF No. 40 at 5). However, judgment creditors have broad authority to obtain post-judgment discovery in support of a judgment or its execution. *See* Fed. R. Civ. P. 69(a)(2); *Vicedomini*, 2021 WL 620932, at *2 ("As a judgment creditor, plaintiff is entitled to seek information relevant to collecting on its Judgment against defendants."); *First Tech. Cap., Inc. v. Airborne, Inc.*, 380 F. Supp. 3d 217, 219–20 (W.D.N.Y. 2019) ("The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied and consequently, the judgment creditor should be permitted to conduct a *broad inquiry to uncover any hidden or concealed assets* of the judgment debtor.") (emphasis added) (quoting *Iron Workers Dist. Council of W. N.Y. & Vicinity Pension Fund v. D.C. Scott, Inc.*, No. 10-CV-6373, 2013 WL 1004215, at *2 (W.D.N.Y. Mar. 13, 2013)).

Accordingly, the first prong is satisfied.

ii.     Proof of Reich's Noncompliance is Clear and Convincing

"[T]he clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH) (RLM), 2022 WL 17820083, at *4 (E.D.N.Y. Jan. 10, 2022) (citing *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)). Reich contends that Plaintiff's "bare assertions and affirmations" do not establish with clear and convincing evidence that he failed to comply with the Order. (ECF No. 40 at 4). Although the Court does not disagree that Plaintiff's arguments on this issue were spare, the record alone supports the Court's conclusion that Reich's non-compliance was clear and unambiguous. Reich violated the October Order by failing to submit any amended responses to Questions 9, 11, or 12 by the deadline set by the Court. (*See* ECF No. 35 ¶¶ 8–10). Then, when the Court gave him "seven (7) days to either cut the check or provide [Plaintiff's counsel] with the full and completed disclosures on his financial information as per the subpoena" ("December Order") (ECF Minute Order dated 12/14/2022), Reich again took no action to comply (*see* ECF No. 43). That the December Order came amid Reich finding himself the subject of a criminal investigation neither explains nor excuses his failure to comply with the October Order or meet the Court's earlier deadlines.

Accordingly, the second prong is also satisfied.

iii.    Reich Has Not Diligently Attempted to Comply

With respect to the third prong, "there can be no finding of contempt if it has been shown that the alleged contemnor has been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Leser*, 2011 WL 1004708, at *10 (citation omitted); *see Walsh v. Il Vizio Restorante Italiano Corp.*, No. 21-MC-3147 (JS) (ST), 2022 WL 16540656, at *3 (E.D.N.Y. Oct.

7

27, 2022) (finding that defendant was not reasonably diligent when they "consistently failed to comply with [a court order], making only limited and incomplete productions since it went into effect"). Reich was not reasonably diligent in attempting to comply with the Court's October Order. He consistently failed to comply with the Order, has not made any productions since the Order went into effect, and prior to opposing this Motion, he failed to raise questions or concerns about the Order's meaning.

Accordingly, the third prong is satisfied as well.

    iv.    <u>Reich Has Not Asserted an Effective Defense Against Contempt</u>

"The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of him." *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986). "Because compliance with a court's directive is the goal, an order of civil contempt is appropriate 'only when it appears that obedience is within the power of the party being coerced by the order.'" *Id.* (citing *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). Thus, the Court "will not be blind to evidence that compliance is now factually impossible." *United States v. Rylander*, 460 U.S. 752, 757 (1983). "[O]nce the movant adduces sufficient evidence to establish a *prima facie* case of contempt, the contemnor may assert as a defense a *current* inability to comply with the order." *SEC v. CKB168 Holdings*, No. 13-CV-5584 (RRM) (RLM), 2016 WL 11796951, at *4 n.7 (E.D.N.Y. Feb. 12, 2016) (citations omitted), *adopted by* 2016 WL 11796982 (Sept. 28, 2016). The individual asserting this defense, bears the burden of production. *Id.*; *Rylander,* 460 U.S. at 757; *Badgley*, 800 F.2d at 36; *see also Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("[T]he alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably.").

"A party may defend against a contempt by showing that his compliance is 'factually impossible.'" *Badgley*, 800 F.2d at 36 (citing *Rylander,* 460 U.S. at 757). Compliance may be impossible when a court orders the production of documents that a party does not possess or control, and when a court orders a monetary payment in the face of a party's poverty or insolvency. *Id.* at 37. In contrast, "the assertion of the Fifth Amendment privilege against compulsory self-incrimination . . . has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." *Rylander*, 460 U.S. at 758. Indeed, the Supreme Court cautioned against "convert[ing] the [Fifth Amendment] privilege from the shield against compulsory self-incrimination . . . into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." *Id.*

Reich has not established that it would be impossible to comply with the October Order. He alleges that the items seized as part of the criminal investigation are "necessary for [Defendants] to properly *defend themselves* in the civil proceedings" (Motion for Stay or Extension at 5; ECF No. 47 at 9) (emphasis added), but because liability has already been established, there is nothing left to defend. He does not claim that the seizures make it impossible to answer the outstanding questions. Further, although Reich has not raised the Fifth Amendment as a defense to contempt, the Court considers whether the record supports such a defense given that Reich requests a stay of proceedings specifically to avoiding being compelled to self-incriminate. (Motion for Stay or Extension at 4). However, Reich's assertion that he is under criminal investigation and "would absolutely invoke his Fifth Amendment right to remain silent if compelled to proceed in the underlying litigation" (*id.*) is likewise insufficient to show that compliance is factually impossible. *See Rylander*, 460 U.S. at 761.

9

### C. Sanctions

#### i. Attorney's Fees

"To meet the compensatory goal of civil contempt, a district court 'may award appropriate attorney fees and costs to a victim of contempt.'" *Tacuri v. Nithun Constr. Co.*, No. 14-CV-02908 (CBA) (RER), 2019 WL 6914042, at *2 (E.D.N.Y. Dec. 19, 2019) (citing *Weitzman v. Stein*, 98 F.3d 717, 719 (2d. Cir. 1996)). When evaluating a motion for attorney's fees, courts in this District apply "the lodestar method," which consists of multiplying a reasonable hourly rate with the reasonable number of hours required by a case to create a presumptively reasonable fee. *Millea v. Metro-North R.R.*, 658 F.3d 154, 166–67 (2d. Cir. 2011). The moving party bears the burden of establishing the "reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Commc'n Servs.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008). Additionally, a party seeking to recover attorney's fees must submit "accurate, detailed, and contemporaneous time records." *Labarbera v. ASTC Labs*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010) (citation omitted).

Plaintiff requests $2,175 in attorney's fees. (ECF No. 36 at 2). This amount is based on 5.8 hours of attorney time billed at a rate of $350 per hour. (ECF Nos. 35 ¶ 16, 35-6). Plaintiff submitted a description of his counsel's credentials to substantiate the hourly rate, indicating that counsel is a senior associate who has been in practice since 2012 (ECF No. 35 ¶¶ 11–16), as well as a detailed invoice describing how counsel allocated his time to the tenth of an hour (ECF No. 35-6). The proposed rate, however, is higher than is typically awarded in this District for attorneys with similar levels of experience. *See Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *10 (E.D.N.Y. Sept. 8, 2022) (recommending a rate of $300 per hour for a senior associate who has been in practice since 2012); *Calle v. Pizza Palace Café LLC*, No. 20-CV-4178 (LDH) (LB), 2022 WL 609142, at *15 (E.D.N.Y. Jan. 4, 2022) (same).

Accordingly, the Court grants Plaintiff's request for attorney's fees. However, the total amount is limited to $1,740, based on a reduced $300 per hour rate for 5.8 hours of work.

    ii.    <u>Coercive Sanctions</u>

Monetary sanctions may be imposed by the Court after consideration of the following factors (1) "the character and magnitude of the harm threatened by continued contumacy," (2) "the probable effectiveness of any suggested sanction in bringing about [compliance]," and (3) "the contemnor's ability to pay." *Paramedics*, 369 F.3d at 657–68 (2d Cir. 1982) (citations omitted).

These factors weigh against imposing a monetary sanction. To be sure, with respect to the first factor, Reich had already failed to comply with the subpoena for six months when the Court issued its October Order, and several months have elapsed since then. Despite repeated warnings that he would face contempt for not providing complete responses to Questions 9, 11, and 12, Reich did not comply. This delay has limited Hernandez's ability to enforce the $70,000 judgment against Sub Enterprises, which all parties consented to more than eighteen months ago. (ECF Order dated 10/29/2021). However, the second and third factors are less conclusive. Reich has indicated that because he is "the subject of a criminal investigation, he will be unable to respond further in these proceedings . . . without violating his constitutional rights." (Motion for Stay or Extension at 3). Though inadequate as a defense against contempt, this assertion suggests that a monetary sanction may not suffice to ensure his compliance with the Court's Order. Additionally, neither party has addressed Reich's ability to pay the fine. *See Comm'n Express Nat'l, Inc. v. Rikhy*, No. 03-CV-4050 (CPS), 2005 WL 1397889, at *4 (E.D.N.Y. June 13, 2005) (finding coercive sanctions to be unwarranted when no evidence or arguments were presented concerning, *inter alia*, defendant's ability to pay).

The Court finds that the second and third factors outweigh the first, and accordingly, declines to impose coercive sanctions.

## II. Motion for A Protective Order Is Granted in Part and Denied in Part

Defendants seek protection from the Court to shield Reich's private financial information from Hernandez as well as from the public. (ECF Nos. 38 at 1, 41 at 2).

### A. Legal Standard

Under Rule 26(c), a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" when the party seeking the order demonstrates good cause to justify the issuance of the protective order. Fed. R. Civ. P. 26(c). The moving party must also establish that they have "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (quoting *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 144 (2d Cir. 1987)). This burden is met by proving that a "clearly defined and serious injury" would result from release of the discovery material in question. *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (quotation omitted).

Importantly, in the context of post-judgment enforcement, "[j]udgment creditors 'must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'" *AXGINC Corp. v. Plaza Automall*, No. 14-CV-4648 (ARR) (VMS), 2018 WL 4771886, at *4 (E.D.N.Y. Oct. 2, 2018) (citing *GMA Accessories, Inc. v. Elec. Wonderland*, No. 07 Civ. 3219, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012)); *see also Libaire v. Kaplan*, 760 F. Supp. 2d 288, 294–95 (E.D.N.Y. 2011) (upholding a post-judgment subpoena that sought the

production of confidential and privileged information, such as all financial documents pertaining to any businesses in which the judgment debtor had an ownership interest).

B. Analysis

Although Defendants' counsel conferred with Plaintiff's counsel in attempting to resolve this dispute (ECF No. 38-1 ¶ 5–6; *see also* ECF Nos. 35 ¶ 9, 36 at 4), Defendants have not established sufficient good cause for the Court to issue a protective order that shields Reich from producing the information requested by Plaintiff. According to Defendants, "[p]roduction of [the requested] information would compromise and cause harm to Mr. Reich and his business, Sub Enterprises, Inc. due to its exposure to the public record" (Motion for Protective Order at 1), but they fail to clearly define what the anticipated harm would entail. Defendants posit that disclosure would "invite intrusion into the private records of entities which are not parties to this litigation." (*Id.* at 2). However, Reich and Sub Enterprises *are* parties to this litigation, and Questions 9, 11, and 12 seek exactly the type of financial information that is routinely requested in post-judgment discovery. Reich has not demonstrated how disclosure of his private records, especially given that they are "inextricably bound together" with those of Sub Enterprises (ECF No. 47 at 8), constitute a clearly defined or serious injury. Nevertheless, because the information is sought for the sole purpose of aiding enforcement of the judgment against Sub Enterprises, and Plaintiff has not put forward any argument for why Reich's responses should be made available to the public, the Court finds it appropriate to restrict public access to the requested information.

Accordingly, this Motion is granted in part and denied in part. Reich is required and directed to supplement his responses to Questions 9, 11, and 12. However, as a matter of discretion, the Court grants Defendants' entreaty to limit the audience of the requested information, such that

13

Reich may submit his responses for attorney's eyes only, to be used exclusively for the enforcement of judgment, absent further order from the Court.

### III.     Motion for Stay of Proceedings or Extension of Time to Respond is Denied

Reich requests a stay of all civil proceedings until the ongoing criminal investigation of him concludes. (Motion for Stay or Extension at 3). Alternatively, Reich asks the Court to stay proceedings for at least 120 days or until there is a change in the criminal investigation. (*Id.* at 5).

#### A.     Legal Standards

"A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *State Farm Mut. Auto. Ins. v. Mittal*, No. 16-CV-4948 (FB) (SMG), 2018 WL 3127155, at *2 (E.D.N.Y. June 25, 2018) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012)). "[A] stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy." *Bernard v. Lombardo*, No. 16 Civ. 863, 2017 WL 2984022, at *2 (S.D.N.Y. June 9, 2017) (quoting *Louis Vuitton*, 676 F.3d at 98). Indeed, "[t]he existence of a civil defendant's Fifth Amendment right arising out of a related criminal proceeding thus does not strip the court in the civil action of its broad discretion to manage its docket." *Louis Vuitton*, 676 F.3d at 98–99; *see also Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[T]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.") (ellipses omitted) (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980), *cert. denied by* 449 U.S. 993 (1980)). District courts in the Second Circuit are guided by six factors

when determining whether to grant a stay in civil proceedings[7] to allow a related criminal proceeding to conclude:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton*, 676 F.3d at 99.

A preemptive assertion of the Fifth Amendment privilege does not justify granting a stay of proceedings.[8] *See CFPB v. MacKinnon*, No. 16-CV-880, 2021 WL 4461695, at *5 (W.D.N.Y. Sept. 29, 2021) ("[individuals] may not simply make a blanket assertion of [the Fifth Amendment] privilege, but must assert the privilege under oath and in response to specific questions"). In affirming an agency decision to deny a request for a stay pending the outcome of criminal proceedings, the Second Circuit reiterated its position "that when a party must choose between testifying in a civil case or maintaining [their] Fifth Amendment silence," they face "[t]he same dilemma [as] any witness in a civil or criminal trial who is . . . under investigation or indictment." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 388 (2d Cir. 2001) (citations omitted) (collecting cases). That is, they "must either invoke [their] privilege against self-incrimination, or

---

[7] In addition, federal courts may grant a stay during post-judgment enforcement proceedings, when "a party . . . provid[es] a bond or other security" Fed. R. Civ. P. 62(b); *see Blue Citi LLC v. 5Barz Int'l Inc.*, No. 16 Civ. 9027, 2019 WL 10890126, at *3 (S.D.N.Y. Feb. 6, 2019) ("A district court 'may, in its discretion, waive the bond requirement if the [movant] provides an acceptable alternative means of securing the judgment.'"). Because Defendants did not raise the possibility of providing a bond or other means of securing the judgment, the Court need not consider whether to grant stay under Rule 62(b).

[8] Defendants request the stay pursuant to N.Y. C.P.L.R. § 2201 and rely primarily on New York case law to support their Motion. However, New York courts are likewise reluctant to stay civil proceedings while a related criminal action is resolved based solely on pre-emptive assertions of the privilege against self-incrimination. *See Spencer v. City of Buffalo*, 172 A.D.3d 1916, 1917 (4th Dep't 2019) (concluding that "even if certain questions . . . might relate to the criminal prosecution," a defendant may only assert this privilege upon "reasonably perceiv[ing] a risk from answering a particular question") (collecting cases).

assume the general duty to give what testimony one is capable of giving.'" *Id.* As such, a court may deny a stay "in favor of an alternative remedy, such as leaving the party in question to invoke the Fifth Amendment." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 Civ. 1590, 2016 WL 1178773, at *2 (S.D.N.Y. Mar. 23, 2016).

B.   Analysis

Review of the six factors show that a stay of civil proceedings is not warranted.

i.   Overlap of the Cases

"'A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter.'" *Harris v. Nassau Cnty.*, No. 13-CV-4728 (NGG) (RML), 2014 WL 3491286, at *3 (E.D.N.Y. July 11, 2014) (quoting *Crawford & Sons v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004)). Here, although the criminal investigation and underlying civil action do not involve the same conduct, the location and information detailed in the search and seizure warrant coincide with the information sought in Questions 9, 11, and 12. For example, the search warrant authorized, *inter alia*, seizure of "[a]ny and all records relating to any company owned or controlled by Joel Reich," including "ownership records, bank or other financial records" pertaining to Sub Enterprises and the Barrier Group, as well as records concerning any loans through Small Business Administration and the Paycheck Protection Program. (ECF No. 44-1 at 3). These records likely contain much, if not all, of the information requested by the three pending questions. (*See supra* note 4). Thus, the first factor weighs in favor of granting a stay.

ii.   Status of the Cases

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party *under indictment* for a serious offense is required to defend a civil or

16

administrative action involving the same matter." *CKB168 Holdings*, 2016 WL 11472222, at *2 (citing *Dresser Indus.*, 628 F.2d at 1375–76; *Louis Vuitton*, 676 F.3d at 101) (emphasis added). "In fact, '[p]re-indictment requests for a stay of civil proceedings are generally denied.'" *Id.* (quoting *U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003); *see Harrington v. Crater*, No. 17-CV-2343 (JS) (ARL), 2021 WL 1091911, at *5 (E.D.N.Y. Mar. 22, 2021) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct."). Here, Reich has not been indicted. Accordingly, the second factor weighs strongly against a stay.

    iii.    <u>Prejudice to Hernandez</u>

Plaintiff's interest in proceeding expeditiously and the prejudice to him of further delaying satisfaction of judgment is significant. The judgment against Sub Enterprises was entered sixteen months ago and Plaintiff has been waiting for Reich's responses to the subpoena that underpin these motions for nearly one year. Throughout this time, Sub Enterprises has refused to satisfy the judgment it offered (*see* ECF No. 20), and despite diligent efforts by Plaintiff to enforce the judgment, Reich has failed to comply with post-judgment discovery requests or with this Court's orders. Reich's "obstructionist conduct" including his delayed disclosure of the ongoing criminal investigation has long hindered Plaintiff's ability to collect his judgment. *See Universitas Educ.*, 2016 WL 1178773, at *3 (concluding that prejudice to Plaintiff weighed against a stay when "dilatory tactics" and "inconsistent use of the Fifth Amendment privilege" had "frustrated and delayed [Plaintiff's] collection of its judgment"). Because a stay would impose another unfair roadblock and further constrain Plaintiff's enforcement of the offered judgment, this factor weighs against a stay.

      iv.      <u>Prejudice to Reich and Sub Enterprises</u>

Neither Reich nor Sub Enterprises have demonstrated that their private interests or the burden of continuing proceedings warrant a stay. As stated above, because a judgment has already been entered in the case, liability is not in dispute, and the opportunity "to properly defend themselves in civil proceedings," which Reich and Sub Enterprises seek to preserve (Motion for Stay or Extension at 5; ECF No. 47 at 9), has long since passed. Moreover, Defendants' claim that denying a stay would "require [them] to file cross-motions" and compel Reich to self-incriminate is incorrect. (Motion for Stay or Extension at 4–5); *see Universitas Educ.*, 2016 WL 1178773, at \*4 ("[A]n order that [discovery] proceed is not an order that [the respondent] has to answer any particular question or that he cannot invoke his Fifth Amendment privilege."); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[I]t does not offend the Constitution if a defendant in a civil case is asked questions the answers to which might incriminate him."). Thus, this factor likewise weighs against a stay.

      v.      <u>The Court's Interest</u>

The Court has a strong interest in resolving this matter. Defendant's unpaid judgment and Reich's refusal to comply with Plaintiff's subpoena and the Court's orders has demanded "repeated judicial intervention and wast[ed] scarce judicial resources." *Universitas Educ.*, 2016 WL 1178773, at \*4 (citations omitted); *see CKB168 Holdings.*, 2016 WL 11472222, at \*5 ("Courts have an interest in the efficient resolution of civil cases."). As such, and given Reich's limited cooperation throughout post-judgment discovery, including his two-month delay in alerting the Court of the criminal investigation or his Fifth Amendment concerns, this Court's interest "in the efficient management of its docket would be manifestly undercut if a stay were granted." *Universitas Educ.*, 2016 WL 1178773, at \*4 (quotation omitted).

18

vi. The Public Interest

Finally, granting a stay would not serve the public's interest "in the efficient functioning of the judicial system which is undermined by the indefinite suspension of civil proceedings." *Id.* (citations and quotation marks omitted). Moreover, "the public's interest in preservation of constitutional rights is unaffected by [denying the stay] because . . . [Reich's] right to invoke the Fifth Amendment is unaffected by this Order." *Id.* Thus, this factor also weighs against a stay.

Accordingly, the Court denies Defendants' request to stay or extend proceedings.

## CONCLUSION

The Court holds Reich in civil contempt effective immediately and orders him to provide Plaintiff's counsel with complete responses to Questions 9, 11, and 12 of the Information Subpoena, for attorney's eyes only, or properly invoke his Fifth Amendment privilege;[9] and pay reasonable attorney's fees in the amount of $1,170 within seven days of this Memorandum and Order. Should Reich fail to meet this deadline, the Court may reconsider the merits of imposing coercive monetary sanctions.

**SO ORDERED.**

/s/ Ramon E. Reyes, Jr.

RAMON E. REYES, JR.
United States Magistrate Judge
Dated: March 7, 2023
Brooklyn, NY

---

[9] Notwithstanding his inadequate and untimely assertion of the Fifth Amendment, in light of the ongoing criminal investigation, the Court will allow Reich to properly invoke his Fifth Amendment privilege, should he choose to do so, with respect to Questions 9, 11, and 12. *See CFPB*, 2021 WL 4461695, at *4 (using discretion not to find waiver of Fifth Amendment privilege even though "any claim to its protection should have been [but was not] asserted within the time frame for responding to the requests for production, interrogatories and information subpoenas").